UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICHOLAS P. HART,

       **Plaintiff,**

   v.                                              3:10-CV-1064

**THE CITY OF BINGHAMTON, and
ROBERT CHARPINSKY, Patrolman,
Individually and in his Official Capacity as
Police Officer for the City of Binghamton,**

       **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.   INTRODUCTION**

Plaintiff Nicolas P. Hart ("Plaintiff") commenced this action asserting claims pursuant to 42 U.S.C. § 1983 and New York state law. Defendants The City of Binghamton ("the City") and Patrolman Robert Charpinsky ("Charpinsky") have moved for partial summary judgment seeking to dismiss certain claims. Plaintiff has opposed the motion and Defendants have filed reply papers. The Court will decide the motion based upon the parties' submissions, all of which have been considered.

**II.   STANDARD OF REVIEW**

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct.

1

1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That is, "[s]ummary judgment is appropriate only if, after drawing all permissible factual inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011)(citing Anemone v. Metro. Transp. Auth., 629 F.3d 97, 113 (2d Cir. 2011)).

### III.  BACKGROUND

Plaintiff's claims in this action arise from his September 13, 2009 arrest. On this date, at approximately 8:30 or 9:00 PM, an argument occurred in the driveway between 3 and 5 Gaylord Street in the City of Binghamton. The argument involved Patricia Hart, Nicole Tiffany, and Nicole Tiffany's mother. Patricia Hart is Plaintiff's sister. Plaintiff overheard the argument from 5 Gaylord Street and went outside to investigate. He heard the two women threatening his sister so he became involved in the argument. Nicole Tiffany called the Broome County 911 call center and reported a domestic dispute. She also told the 911 operator that Plaintiff had a knife. Plaintiff alleges that when his sister told him that Tiffany reported that he had a knife, he ran into 5 Gaylord Street, threw the knife in his room, and then ran back outside and continued arguing.

Charpinsky, who was on duty at the time as a Patrolman with the City of Binghamton Police Department, was dispatched to this call. Upon his arrival, Charpinsky parked his police vehicle across the street from the driveway between 3 and 5 Gaylord Street and exited the vehicle. He observed a number of individuals arguing in this

2

driveway. One of the women in the driveway yelled that Plaintiff had a knife.[1] Plaintiff asserts that he began walking toward Officer Charpinsky stating that he no longer had the knife on his person. Charpinsky instructed Plaintiff and Patricia Hart to retreat to the front of 5 Gaylord Street. They complied. Charpinsky told Patricia Hart to leave the scene and enter into her home at 5 Gaylord Street, which she did. Charpinsky then instructed Plaintiff to put his hands above his head and against the porch at 5 Gaylord Street, which he did. Plaintiff alleges that Officer Charpinsky then handcuffed him, began demanding Plaintiff to tell him where the knife was, slammed Plaintiff into the porch a number of times fracturing a bone in his shoulder, and then threw Plaintiff to the ground fracturing a bone in his left knee.[2]

On July 28, 2010, Plaintiff served a Notice of Claim on the City. The Notice of Claim described the events of September 13, 2009, and alleged that the City had been negligent and/or grossly negligent by "failing to properly train and supervise its officers in the use of reasonable force in citizen confrontations," and that the City was also liable under the theory of "*respondeat superior*" for the actions of Charpinsky. Charpinsky was not named as a respondent in the caption of the Notice of Claim, but his alleged acts were described in detail in the body of the Notice of Claim. See Notice of Claim, ¶¶ 6-7.

---

[1]There is a dispute as to whether the woman yelled that Plaintiff had a knife, or that he had threatened the women with the knife.

[2]Officer Charpinsky alleges that while Mr. Hart initially placed his hands above his head, after Officer Charpinksy placed the handcuffs on one of Mr. Hart's wrists, Mr. Hart began to struggle and pulled the second hand away before it could be placed in the handcuffs. Officer Charpinsky states he could hear Mr. Hart's friends "cheering [Hart] on or rooting for him" while they struggled, and saw two males walking toward him from behind. Officer Charpinsky believed that he was about to be attacked from behind so, in order to protect himself, Officer Charpinsky took Mr. Hart to the ground in such a way that Mr. Hart was on the ground between him and the would-be attackers. These events purportedly unfolded with such speed that Officer Charpinsky, who was by himself, was not able inform the dispatcher that he was having difficulty with a suspect or that he needed assistance.

Plaintiff commenced this action September 2, 2010 asserting claims pursuant to 42 U.S.C. § 1983 and New York State law.[3] Defendants have moved for partial summary judgment seeking to dismiss some of the claims, discussed more fully below.

## IV.   DISCUSSION

### a.   State Law Claims Against Robert Charpinsky

Defendants assert that Plaintiff's state law claims against Charpinsky must be dismissed because Charpinsky was not named as a respondent in Plaintiff's New York General Municipal Law Section 50-e Notice of Claim. "The Court recognizes that it is well settled that 'General Municipal Law § 50–e makes unauthorized an action against individuals who have not been named in a notice of claim.'" Hodge v. Vill. of Southampton, 09-CV-2606 JFB WDW, 2012 WL 174838, at *18 (E.D.N.Y. Jan. 20, 2012) (quoting DC v. Valley Cent. Sch. Dist., 2011 WL 3480389, at *1 (S.D.N.Y. June 29, 2011)(internal quotation marks and citations omitted)(collecting cases)).   However,

> "[t]he purpose of the statutory notice of claim requirement is to afford the public corporation 'an adequate opportunity to investigate the circumstances surrounding [a claim] and to explore the merits of the claim while information is still readily available.' " Mojica v. N.Y.C. Tr. Auth., 117 A.D.2d 722, 723, 498 N.Y.S.2d 448 (N.Y. App. Div.1986) (quoting Caselli v. City of New York, 105 A.D.2d 251, 252, 483 N.Y.S.2d 401 (N.Y. App. Div.1984)). The test of the notice's sufficiency is whether it includes information sufficient to enable the city to investigate the claim. O'Brien v. City of Syracuse, 54 N.Y.2d 353, 358, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981). In determining whether a claimant has complied with the statutory requirements for notice of claims, "the court should focus on the purpose served by the notice of claim and

---

[3]In this regard, the Complaint asserts claims against the City sounding in: 1) a Fourth Amendment claim of unreasonable search and seizure and use of excessive force; 2) a Due Process violation related to an alleged use of excessive force and a state law claim of assault and battery; 3) a claim that the City failed to train and supervise its officers in the proper use of force; and 4) a state law negligence claim based upon the theory of *respondeat superior*.  The Complaint asserts claims against Charpinsky sounding in: 1) a Fourth Amendment claim of unreasonable search and seizure and use of excessive force; 2) a Due Process violation related to an alleged use of excessive force; and 3) a state law claim of assault and battery.

4

> whether, based on the claimant's description, municipal authorities can locate the place, fix the time and understand the nature of the accident." Niles v. City of Oneida, No. 6:06–CV–1492, 2009 WL 799971, at *3 (N.D.N.Y. Mar. 25, 2009).

Hodge, 2012 WL 174838, at *17.

Charpinsky is explicitly named in the body of the Notice of Claim and his alleged unlawful acts are described in detail. This presented the City with sufficient information to enable it to investigate the circumstances surrounding the claims asserted and to explore the merits of these claims while information was still readily available. See id. at *17 Therefore, like in Hodge, "[t]he Court concludes that, although his name did not also appear in the caption of the Notice, the clear identification of defendant [Charpinsky] in the substance of the Notice is sufficient to satisfy [the General Municipal Law § 50–e] requirement." Id.   Accordingly, summary judgment on this ground is denied.

### b.    *Respondeat Superior* **State Law Claims Against The City**

Defendants argue that if the state law claims against Charpinsky are dismissed, the respondeat superior state law claims against the City must also be dismissed for lack of a necessary predicate.  However, because the state law claims against Charpinsky are not dismissed, the motion on this ground is denied.

### c.    **False Arrest & Illegal Search Claims**

Defendants argue that Plaintiff cannot state claims for false arrest or illegal search because probable cause existed to arrest and search Plaintiff.  Plaintiff responds:

> [W]hile plaintiff does not concede there was probable cause for his arrest and the search of his person that ensued in these events after Charpinsky arrived at the scene, he respectfully submits his Complaint in this action makes clear he is suing the defendants for Charpinsky's use of excessive force during the search and seizure of the defendant that Charpinsky

5

conducted on September 13, 2010....

Thus, while the events surrounding the arrest, search and seizure on September 13, 2009, are clearly relevant facts, they are not material to the plaintiff's actual complaint since neither false arrest nor illegal search are the particular constitutional violations raised. Indeed, a false arrest does not always involve the use of excessive force and vice versa. Here, plaintiff pursues an excessive force claim, and this Court should decline to grant defendants summary judgment on claims that the plaintiff has not pursued.

Pl. MOL, pp 8-10.

Whether Plaintiff has pursued claims of illegal search and seizure during the litigation is not the issue. The claims are clearly pleaded in the Complaint, see Compl. ¶¶ 33-34,[4] and Defendants have moved for summary judgment dismissing these claims.

The undisputed facts indicate that upon Charpinsky's arrival at the scene to investigate a domestic dispute 911 call, a woman involved in the dispute yelled to him that Plaintiff had a knife. Plaintiff then began approaching Officer Charpinsky asserting that he no longer had the knife on his person. These facts are sufficient to establish a legal justification for Charpinsky to detain Plaintiff for an investigation and to search Plaintiff's person for Charpinsky's safety during that investigation. See Terry v. Ohio, 392 U.S. 1, 20-30 (1968).

Further, these facts establish probable cause for Officer Charpinsky to believe that

---

[4]The Complaint alleges:

33. Defendants herein deprived plaintiff of his rights guaranteed by the Constitution of the United States including but not limited to the Fourth and Fourteenth Amendments thereto, as a result of the unreasonable seizure with the use of excessive force.

34. Defendants carried out the aforesaid conduct with deliberate indifference to the plaintiff's rights, including but not limited to the right to be free from unreasonable search and seizure and from the use of excessive force.

Compl. ¶¶ 33-34 (emphasis added).

6

Plaintiff, as an apparent participant in the dispute that prompted the 911 call, threatened another in violation of New York Penal Law § 240.26,[5] and perhaps did so with the knife in violation of New York Penal Law § 120.14.[6]  Thus, based on the rapidly unfolding events and information possessed at the time, Charpinsky had probable cause to arrest and search Plaintiff.  See Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."); Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010) ("Probable cause exists if at the time of the arrest 'the facts and circumstances within th[e officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'")(citing Beck v. Ohio, 379 U.S. 89, 91 (1964)); Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006)(The relevant inquiry is whether "probable cause existed to arrest a defendant" and "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."); Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000)("It is

---

[5] New York Penal Law § 240.26 provides:

A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:

1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or

2. He or she follows a person in or about a public place or places; or

3. He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

[6] New York Penal Law § 120.14 provides:  "A person is guilty of menacing in the second degree when: 1. He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument * * *."

well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness."); Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997)("If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable . . . merely because it later turns out that the complaint was unfounded."). Accordingly, summary judgment is warranted dismissing Plaintiff's false arrest and illegal search claims. See Chambers v. Maroney, 399 U.S. 42, 51, 90 S. Ct. 1975, 26 L. Ed.2d 419 (1970) ("In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the [Supreme] Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution."); Jaegly, 439 F.3d at 152 ("[T]he existence of probable cause is an absolute defense to a false arrest claim."); see also Abdul-Rahman v. City of New York, 10 CIV. 2778, 2012 WL 1077762 (E.D.N.Y. Mar. 30, 2012) (The fact of a lawful arrest, standing alone, authorizes a search. Because the Court finds the officers had probable cause to arrest him, the search of plaintiff was also lawful.")(citing United States v. Robinson, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed.2d 427 (1973)).

### d. Failure to Supervise/Train

Defendants also seek to dismiss Plaintiff's claims of an unconstitutional policy of failing to train or supervise its officers regarding the use of force during arrests. In order to succeed on this claim under either theory, Plaintiff "must show that the [constitutional violation] was the result of municipal custom, policy, or practice." Fitzgerald v. Barnstable Sch. Comm., --- U.S. ----, 129 S. Ct. 788, 797 (2009) (citing Monell v. Dep't of Social

Servs. of City of N.Y., 436 U.S. 658, 694 (1978)).[7]  "A municipality's failure to train or supervise its officers can rise to the level of an actionable policy or custom where it amounts to 'deliberate indifference' to the constitutional rights of its citizens." Hall v. Marshall, 479 F. Supp.2d 304, 315-16 (E.D.N.Y.2007) (citations omitted).

### 1. Failure to Supervise

"As the phrase 'deliberate indifference' suggests, a plaintiff cannot prevail [on a failure to supervise theory] merely upon proving a failure to investigate or rectify the situation; []he must demonstrate that such failure 'evidences deliberate indifference, rather than mere negligence or bureaucratic inaction.'" Stevens v. City of Bridgeport, 607 F. Supp.2d 342, 356 (D. Conn. 2009)(quoting Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 128 (2d Cir. 2004)).  On such a theory, "[p]laintiff[] must also prove causation; that is, that the 'state defendants' inadequate supervision actually caused or was the moving force behind the alleged violations.'" Id. (quoting Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007)).

Plaintiff has presented evidence that Binghamton Police Department's Internal Affairs Officer, Capt. John C. Chapman, is the "single senior officer delegated to investigate" complaints of police officer excessive force. Chapman Dep., p. 5.  Further,

---

[7]

In Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978), the Supreme Court established that "[l]ocal governing bodies ... can be sued directly under [42 U.S.C.] § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690, 98 S. Ct. 2018.

Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 124-25 (2d Cir. 2004).

Plaintiff points out that despite "numerous notices of claim and complaints filed by citizens that are reflected in the City's records of civilian complaints" of excessive force by officers, Pl. MOL. p. 4, Chapman could not recall finding a single instance in which he concluded a Binghamton police officer used excessive force.  Chapman Dep. 7.  Chapman further indicated that the City maintains no written policy on the factors to consider in determining whether excessive force was used by an officer. Id. p. 13.  Finally, Plaintiff points to Chapman's testimony which confirms that Chapman does not consult with a physician to determine the amount of force necessary to inflict specific injuries sustained by arrestees. Id. p. 15-16; 19-20.

However, while Plaintiff has cited to numerous cases concerning citizen complaints of the use of excessive force by City police officers, Plaintiff has not provided evidence tending to indicate that any these complaints were of substance.[8]  That is, while Plaintiff has provided evidence of complaints, he has not provided evidence that any of the complaints were determined by a neutral fact finder to be meritorious. Thus, Chapman's failure to find any of the officers engaged in excessive force alleged in the complaints does not mean, *a fortiori*, that the City was deliberately indifferent to the well being of its citizens.

Of course, "[d]eliberate indifference may also be inferred from a failure to supervise, such as when meaningful attempts to investigate repeated claims of excessive force are absent." Ahern v. City of Syracuse, 411 F. Supp. 2d 132, 146 (N.D.N.Y. 2006)

---

[8]On this point, Defendants argue that the cases cited by Plaintiff were brought by Plaintiff's counsel's law firm but do not include any that resulted in a finding by a court or jury of the use of excessive force. Def. Reply MOL, pp. 7-8. Defendants argue that, at most, some of the cases were settled for "nuisance value" by the City. Def. Reply MOL, p. 7.

(citing Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir.1995)).   However,

> [t]he existence of repeated complaints . . . is not sufficient; rather, it is the combination of such complaints with the municipality's response which "tip[s] the scales toward the probative." Mendoza v. City of Rome, 872 F. Supp. 1110, 1118 (N.D.N.Y.1994). For deliberate indifference to be shown, the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints. Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir.1986)(knowledge of prior allegations of excessive force can form the basis of a finding of deliberate indifference, even where "none of the claims ha[s] yet been adjudicated in favor of the claimant," so long as "the [municipality's] efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of the indifference to the truth of the claim"). Simple disagreement with the nature or extent of punishment imposed on an official as a result of his actions will not demonstrate a municipal policy of failure to supervise. See Sarus v. Rotundo, 831 F.2d 397, 401-02 (2d Cir.1987).

Ahern, 411 F. Supp. 2d at 146.  Here, Plaintiff does not assert a persistent failure by the City to investigate the complaints, but rather a simple disagreement with the conclusions reached by the investigating official.

Further, deliberate indifference is not established merely because Chapman did not consult a physician to determine the amount of force necessary to inflict certain injuries sustained by arrestees, or because the City did not have specific policy guidelines on what constitutes constitutionally excessive force.  Excessive force is defined relative to the force reasonably believed necessary under the circumstances, and is not determined by the nature of the resulting injuries sustained.  See Graham v. Connor, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989)[9]; Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir.

---

[9]The Fourth Amendment prohibits the use of excessive force by a police officer "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989). The test for excessive force is one of reasonableness. Id. "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." Id. at 394. The Fourth Amendment standard is purely objective: "the question is whether the officers' actions are

11

2010)("[T]he inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiffs Fourth Amendment interests against the countervailing governmental interests at stake.")(citation omitted). The fact that the City's Internal Affairs Officer investigating citizen complaints of excessive force did not consult a physician on the subject of the force necessary to inflict certain injuries, or did not have written guidelines to cover the myriad of circumstances that police officers are sure to encounter, does not amount to deliberate indifference to the constitutional well being of the City's citizens.

Plaintiff has also failed to raise a genuine question of material fact as to whether the City's alleged failure to supervise its officers was the moving force behind Plaintiff's injury.

> It is well-settled that a plaintiff may establish this required causal link by showing that a defendant was deliberately indifferent to the training, supervision, or discipline of its employees. See Amnesty Am., 361 F.3d at 127 (citation omitted). In this regard, the plaintiff "must establish [the defendant's] deliberate indifference by showing that 'the need for more or better supervision to protect against constitutional violations was obvious' " and that the defendant "made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct." Id. (quotation omitted).

Dukes v. Troy Hous. Auth., 1:08-CV-479, 2011 WL 1261317 (N.D.N.Y. Mar. 31, 2011).

Plaintiff's contention that the "need for more or better supervision to protect against constitutional violations was obvious" is nothing more than a conclusory assertion, based

---

'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. Because the standard is objective reasonableness, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Id. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)).

12

upon nothing more than the surmise and speculation that if different protocols had been employed following the earlier complaints, Plaintiff would not have sustained an injury during his arrest. Such conclusory contentions, surmise, and speculation are insufficient to withstand summary judgment.

### 2. Failure to Train

On a failure to train theory,

> [a] plaintiff must meet [Walker v. City of New York, 974 F.2d 293 (2d Cir.1992)]'s three-pronged test to demonstrate deliberate indifference, which ordinarily establishes deliberate indifference by showing "that the officials consciously disregarded a risk of future violations of clearly established constitutional rights by badly trained employees." Amnesty Am., 361 F.3d at 127 n. 8 (citing City of Canton, 489 U.S. at 389-90, 109 S. Ct. 1197). To prevail, a plaintiff must also prove causation; that is, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Id. at 129 (citation and internal quotation marks omitted). Demonstrating "negligent administration of a sound program," or that one or more officers negligently or intentionally disregarded otherwise appropriate training, does not suffice. Id. at 129-30.
>
> To survive summary judgment on a failure to train claim, a plaintiff must introduce "evidence as to the city's training program and the way in which that program contributed to the violation." Amnesty Am., 361 F.3d at 127 n. 8. Ordinarily, a plaintiff should introduce evidence of "how the training was conducted, how better or different training could have prevented the challenged conduct, or how 'a hypothetically well-trained officer would have acted'" differently under the circumstances. Id. at 130.

Stevens, 607 F. Supp.2d at 357-58.

Plaintiff asserts "that physical force is frequently used in police encounters with civilians in Binghamton and this conduct continued and resulted in lawsuits against the City shows that more likely than not, the training of it officers by the City as to the continuum of force is neither adequate nor efficient, and the City has made no effort to provide additional training." PL. MOL p. 12. Plaintiff also asserts that "in the case at bar

Plaintiff adduces proof that the City of Binghamton has been sued in numerous cases involving allegations of the use of excessive force that indicates the inadequacies and deficiencies in the City's training of its officers as to the continuum of force and the reasonable application of force" to be used during valid arrests. Pl. MOL p. 13.

However, as addressed above, the mere fact that the City has been sued does not mean that the prior suits were meritorious. There is a critical paucity of evidence from which a fact finder could conclude that the City was placed on notice of any deficiency in its training program by the prior suits, and Plaintiff's conclusory contention that there must have been some deficiency in the training program because Plaintiff suffered fractured bones is insufficient. See Neighbour v. Covert, 68 F.3d 1508, 1512 (2d Cir.1995)("The mere allegation that the municipality failed to train its employees properly is insufficient to establish a municipal custom or policy.").

Accordingly, Plaintiff's claim against the City of an unconstitutional policy of failing to train or supervise its officers regarding the use of force during arrests is dismissed.

## V.   CONCLUSION

For the reasons discussed above, Defendants' motion for partial summary judgment [dkt. # 29] is **GRANTED IN PART and DENIED IN PART**. The motion is granted inasmuch as: (a) all false arrest and/or illegal search claims brought against both Defendants; and (b) Plaintiff's claim against the City of Binghamton asserting an unconstitutional policy of failing to train or supervise its officers regarding the use of force during arrests, are **DISMISSED**. The motion is denied in all other respects.

**IT IS SO ORDERED**

**Dated:** May 2, 2012

                                                Thomas J. McAvoy
                                                Senior, U.S. District Judge